STATE OF NORTH CAROLINA v. LACY ELWOOD KILBY, DEFENDANT

No. COA08-655

(Filed 21 July 2009)

**Sexual Offenses— satellite-based monitoring—level of supervision and monitoring**

The trial court erred by finding that defendant required the highest possible level of supervision and monitoring in regard to his enrollment in satellite-based monitoring (SBM) after release

from prison for numerous sexual offenses because: (1) the State conceded that the trial court's findings of fact were insufficient to support its conclusion that defendant required the highest level of supervision and monitoring; (2) this case was controlled by N.C.G.S. § 14-208.40B since a SBM determination was not made when defendant was sentenced; (3) the DOC risk assessment found that defendant posed a moderate risk; and (4) a remand of the case was not necessary when the State presented no evidence which would tend to support a determination of a higher level of risk than the moderate rating assigned by the DOC.

Appeal by defendant from order entered on or about 21 February 2008 by Judge Henry E. Frye, Jr. in Superior Court, Wilkes County. Heard in the Court of Appeals 4 December 2008.

*Attorney General Roy A. Cooper, III, by Associate Attorney General Oliver G. Wheeler, IV, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant-appellant.*

STROUD, Judge.

Defendant was ordered to enroll in satellite-based monitoring for five to ten years after release from prison for numerous sexual offenses. Defendant appeals, arguing the trial court erred in (1) finding defendant "required the highest possible level of supervision and monitoring" as the evidence did not support this finding and (2) ordering defendant to enroll in satellite-based monitoring for an indefinite period of time. Defendant also claims ineffective assistance of counsel as his attorney failed to make a proper argument that ordering him to enroll in satellite-based monitoring violated the constitutional prohibition on *ex post facto* law. For the following reasons, we reverse.

## I. Background

On or about 25 April 2002, defendant pled guilty to one count of second degree sexual offense and six counts of indecent liberties with a child. Defendant was sentenced to serve a minimum of 65 months and a maximum of 87 months in prison. Around August of 2007 defendant was released from prison and placed on post-release supervision for five years. On or about 21 February 2008, after a hearing the trial court found:

1. The defendant was convicted of a reportable conviction as defined by G.S. 14-208.6(4), but the sentencing court made no determination on whether the defendant should be required to enroll in satellite-based monitoring under Article 27A of Chapter 14 of the General Statutes.

2. The Department of Correction has made an initial determination that the offender falls into one of the categories requiring satellite-based monitoring under G.S. 14-208.40.

3. The Department of Correction scheduled a hearing in the county named above, which is the county of the defendant's residence, the Department provided notice to the defendant as required by G.S. 14-208.40B, and the hearing was not held sooner than 15 days after the date the Department mailed the notice.

4. The defendant

   a. falls into one of the categories requiring satellite-based monitoring under G.S. 14-208.40 in that

      . . . .

      the offense of which the defendant was convicted involved the physical, mental, or sexual abuse of a minor, that offense was not an aggravated offense, the defendant is not a recidivist, the Department of Correction has conducted a risk assessment of the defendant, and based on that assessment, the defendant requires the highest possible level of supervision and monitoring.[1]

Based upon its findings the trial court ordered defendant to enroll in satellite-based monitoring ("SBM") for five to ten years. Defendant appeals, arguing the trial court erred in (1) finding defendant "required the highest possible level of supervision and monitoring" as the evidence did not support this finding and (2) ordering defendant to enroll in SBM for an indefinite period of time. Defendant also claims ineffective assistance of counsel as his attorney failed to make a proper argument that ordering him to enroll in satellite-based monitoring violated the constitutional prohibition on *ex post facto* law. For the following reasons, we reverse.

---

1. The trial court's order was on Form AOC-CR-616, New 12/07, and the findings are standard findings on this form.

## II. Level of Supervision and Monitoring Required

Defendant contends that

[t]he evidence presented in this case was not sufficient to support the trial court's finding that [defendant] required "the highest possible level of supervision and monitoring." . . .

 . . . .

A moderate level risk assessment, without more, is simply not enough to establish that [defendant] was in need of the "highest possible level of supervision and monitoring."

Thus, defendant argues that "the trial court erred by finding that [he] required the 'highest possible level of supervision and monitoring' and by ordering him to enroll in satellite-based monitoring because the Department of Corrections' risk assessment determined that [defendant] was only a moderate level risk[.]" (Original in all caps.) The State concedes that the trial court's findings of fact were insufficient to support its conclusion that "[d]efendant required the highest possible level of supervision and monitoring[,]" but argues that we should remand the case to the trial court for further findings of fact.

A. Standard of Review

A trial court's determination as to the level of supervision and monitoring which a defendant requires in regards to SBM is an issue of first impression before this Court. N.C. Gen. Stat. § 14-208.40B(c) directs the trial court to "make findings of fact pursuant to G.S. 14-208.40A[,]" regarding the offender's qualification for SBM. N.C. Gen. Stat. § 14-208.40B(c) (2007). The standard of review for the trial court's findings of fact is well-established: The trial court's "findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Brewington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000), *cert. denied*, 531 U.S. 1165, 148 L. Ed. 2d 992 (2001) (citations and quotation marks omitted).

However, the trial court's determination as to whether "the offender requires the highest possible level of supervision and monitoring[,]" is neither clearly a question of fact nor a conclusion of law. N.C. Gen. Stat. § 14-208.40B(c). A conclusion of law calls for the application of legal principles to the facts. *See State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997). N.C. Gen. Stat. § 14-208.40B provides no specific legal principles which define when "the highest

possible level of supervision and monitoring" must be required. N.C. Gen. Stat. § 14-208.40B(c).[2] N.C. Gen. Stat. § 14-208.40B(c) provides only for factual information which the trial court must consider, specifically, the Department of Correction's ("DOC") risk assessment of the offender. *See id.* As noted by the United States Supreme Court in *Thompson v. Keohane,* "the proper characterization of a question as one of fact or law is sometimes slippery." 516 U.S. 99, 110-11, 133 L. Ed. 2d 383, 393 (1995) (citations omitted); *cert. denied,* 525 U.S. 1158, 143 L. Ed. 2d 70 (1999). However, "we review the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." *State v. Garcia,* 358 N.C. 382, 391, 597 S.E.2d 724, 733 (2004) (citation, quotation marks, and brackets omitted); *cert. denied,* 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). We will therefore review the trial court's order to ensure that the determination that "defendant requires the highest possible level of supervision and monitoring" "reflect[s] a correct application of law to the facts found." *Id.*

B. SBM Hearing Procedure

The procedure for SBM hearings is set forth in N.C. Gen. Stat. §§ 14-208.40A and 14-208.40B. N.C. Gen. Stat. §§ 14-208.40A, -208.40B (2007). N.C. Gen. Stat. § 14-208.40A applies in cases in which the district attorney has requested that the trial court consider SBM during the sentencing phase of an applicable conviction. *See* N.C. Gen. Stat. § 14-208.40A(a). N.C. Gen. Stat. § 14-208.40B applies in cases in which the offender has been convicted of an applicable conviction and the trial court has not previously determined whether the offender must be required to enroll in SBM. *See* N.C. Gen. Stat. § 14-208.40B(a). This case is controlled by N.C. Gen. Stat. § 14-208.40B as a SBM determination was not made when defendant was sentenced.

The hearing procedure set forth in N.C. Gen. Stat. § 14-208.40B has two phases; N.C. Gen. Stat. § 14-208.40B(c), for purposes of convenience and clarity, we will refer to these two phases as the qualification phase and the risk assessment phase.[3] First, in the qualifica-

---

2. The "highest possible level of supervision and monitoring" simply refers to SBM, as the statute provides only for SBM and does not provide for any lesser levels or forms of supervision or monitoring of a sex offender. If SBM is imposed, the only remaining variable to be determined by the court is the duration of the SBM.

3. For offenders who fall under N.C. Gen. Stat. § 14-208.40(a)(1), the hearing has only one phase, which is the qualification phase, as SBM is mandatory. The two phase

tion phase, N.C. Gen. Stat. § 14-208.40B(c) requires the trial court to "determine if the offender falls into one of the categories described in G.S. 14-208.40(a)." *Id.* These categories are:

(1) Any offender who is convicted of a reportable conviction as defined by G.S. 14-208.6(4) and who is required to register under Part 3 of Article 27A of Chapter 14 of the General Statutes because the defendant is classified as a sexually violent predator, is a recidivist, or was convicted of an aggravated offense as those terms are defined in G.S. 14-208.6.

(2) Any offender who satisfies all of the following criteria: (i) is convicted of a reportable conviction as defined by G.S. 14-208.6(4), (ii) is required to register under Part 2 of Article 27A of Chapter 14 of the General Statutes, (iii) has committed an offense involving the physical, mental, or sexual abuse of a minor, and (iv) based on the Department's risk assessment program requires the highest possible level of supervision and monitoring.

N.C. Gen. Stat. § 14-208.40(a)(1)-(2) (2007).[4]

The trial court is required to "make findings of fact pursuant to G.S. 14-208.40A." N.C. Gen. Stat. § 14-208.40B(c). Thus, the trial court must make findings of fact as to whether the offender falls into either of the two categories of offenders which may be subject to SBM under N.C. Gen. Stat. § 14-208.40(a). *See* N.C. Gen. Stat. § 14-208.40B(c); *see also* N.C. Gen. Stat. § 14-208.40(a); -208.40A(b). If the trial court finds that the offender falls into the first category, it is required to "order the offender to enroll in satellite-based monitoring for life." N.C. Gen. Stat. § 14-208.40B(c), *see* N.C. Gen. Stat. § 14-208.40(a)(1). However, if the offender falls into the second category by satisfying the first three criteria under N.C. Gen. Stat. § 14-208.40(a)(2), the hearing moves to the risk assessment phase, for consideration of the fourth criterion, which is whether the offender "requires the highest possible level of supervision

---

hearing would apply to offenders, like defendant, who fall under N.C. Gen. Stat. § 14-208.40(a)(2). *See* N.C. Gen. Stat. § 14-208.40B(c); *see also* N.C. Gen. Stat. § 14-208.40(a)(1)-(2) (2007).

4. Effective 1 December 2008, the legislature has created a third category of individuals who may be subject to SBM; however, the 2007 version of the SBM statutes cited herein was in effect at the time of defendant's notice of his SBM hearing and the hearing itself.

and monitoring." N.C. Gen. Stat. §§ 14-208.40(a)(2); *see* N.C. Gen. Stat. § 14-208.40B(c).[5]

At the risk assessment phase,

the court shall order that the Department do a risk assessment of the offender. The Department shall have a minimum of 30 days, but not more than 60 days, to complete the risk assessment of the offender and report the results to the court. The Department may use a risk assessment of the offender done within six months of the date of the hearing. Upon receipt of a risk assessment from the Department, the court shall determine whether, based on the Department's risk assessment, the offender requires the highest possible level of supervision and monitoring. If the court determines that the offender does require the highest possible level of supervision and monitoring, the court shall order the offender to enroll in a satellite-based monitoring program for a period of time to be specified by the court.

N.C. Gen. Stat. § 14-208.40B(c).

C. Application to This Case

In the case before us, the DOC risk assessment found that defendant posed a "moderate" risk[6]; however, the trial court found that defendant "requires the highest possible level of supervision and monitoring." Although we cannot discern any direct correlation between the designation of low, moderate or high risk by the DOC assessment and the terminology of N.C. Gen. Stat. § 14-208.40B(c) which directs the determination of whether an offender may "require the highest possible level of supervision and monitoring," N.C. Gen. Stat. § 14-208.40B(c), the trial court made no findings of fact which could justify the conclusion that "defendant requires the highest possible level of supervision and monitoring." The trial court erred by

---

5. We note that both "phases" of defendant's hearing occurred at the same time, which is entirely appropriate as the DOC had already performed the required risk assessment of defendant. We do not mean to imply that the hearing must be bifurcated; we describe the hearing as having two phases based upon the fact that the risk assessment phase could occur at a later time after the qualification phase based upon the wording of the statute. N.C. Gen. Stat. § 14-208.40B(c).

6. The DOC risk assessment of defendant was done more than six months prior to hearing, although N.C. Gen. Stat. § 14-208.40B(c) requires the assessment to be "done within six months of the date of the hearing." N.C. Gen. Stat. § 14-208.40B(c). However, defendant did not object to use of the DOC assessment at the hearing and did not argue this contention in his brief.

concluding that "defendant requires the highest possible level of supervision and monitoring." The findings of fact are insufficient to support the trial court's conclusion that "defendant requires the highest possible level of supervision and monitoring based upon a "moderate" risk assessment from the DOC.

We must now consider whether evidence was presented which could support findings of fact which could lead to a conclusion that "the defendant requires the highest possible level of supervision and monitoring." If such evidence was presented, it would be proper to remand this case to the trial court to consider the evidence and make additional findings, as requested by the State. However, the State presented no evidence which would tend to support a determination of a higher level of risk than the "moderate" rating assigned by the DOC.

Fletcher Reeves, defendant's supervising officer, testified regarding defendant's prior convictions and his DOC risk assessment. Mr. Reeves also testified that: defendant had been on post-release supervision since his release from prison in August of 2007; defendant would be on post-release supervision for five years; defendant was in group therapy at New River Mental Health; defendant was "complying with all measures of supervision at this time[;]" defendant had been employed at Tyson since shortly after his release from prison; defendant always called Mr. Reeves if he had questions about travel or was going to be late arriving home; and Mr. Reeves had no problems or violations with defendant as of the date of hearing, approximately six months after his post-supervision had begun.

The State did not present evidence which could support a finding that "defendant requires the highest possible level of supervision and monitoring." The DOC assessment of defendant rated him as a moderate risk. The State's other evidence indicated that defendant was fully cooperating with his post release supervision, which might support a finding of a lower risk level, but not a higher one. As no evidence was presented which tends to indicate that defendant poses a greater than "moderate" risk or which would demonstrate that "defendant requires the highest possible level of supervision and monitoring[,]" we need not remand this matter to the trial court for additional findings of fact as requested by the State. Consequently, we reverse the trial court's order.

As the DOC assessed defendant herein as a "moderate" risk and the State presented no evidence to support findings of a higher level of risk or to support the requirement for "the highest possible level of

supervision and monitoring[,]" the trial court's order is reversed. As the order requiring SBM is reversed, we need not consider defendant's remaining arguments.

### III. Conclusion

We reverse the trial court's order requiring defendant to enroll in SBM.

REVERSED.

Judges CALABRIA and STEELMAN concur.