STATE OF NORTH CAROLINA v. JOSEPH KEVIN CAUSBY, Defendant

No. COA08-1533

(Filed 15 September 2009)

**Sexual Offenders— satellite-based monitoring—level of supervision—risk assessment**

The trial court erred by determining that defendant required the highest level of supervision and monitoring after his guilty plea to the charge of taking indecent liberties with a child because the findings of fact were insufficient to support this determination and the State only presented evidence that defendant was a moderate risk.

Appeal by defendant from order entered 31 July 2008 by Judge Laura J. Bridges in Rutherford County Superior Court. Heard in the Court of Appeals 23 April 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth F. Parsons, for the State.*

*Carol Ann Bauer for defendant-appellant.*

GEER, Judge.

Defendant Joseph Kevin Causby appeals from the trial court's order enrolling him in a satellite-based monitoring ("SBM") program for 36 months upon completion of his sentence and any term of post-release supervision. This Court's recent decision in *State v. Kilby*, 198 N.C. App. ——, 679 S.E.2d 430 (2009), controls and requires the conclusion, in this case, that the trial court's determination that defendant requires the highest level of supervision and monitoring—notwithstanding the assessment by the Department of Correction ("DOC") that defendant was a moderate risk for reoffending—is unsupported by the evidence. We, therefore, reverse.

Facts

Defendant was indicted on 4 February 2008 for one count of taking indecent liberties with a child. Defendant pled guilty to the charge on 30 April 2008. The plea arrangement provided that sentencing would be continued to 28 July 2008 and that the State would recommend a probationary sentence. Sentencing actually took place on 30 July 2008. The trial court found as mitigating factors that

defendant had accepted responsibility for his criminal conduct and that defendant had a support system in the community. The trial court determined that a mitigated sentence was justified and sentenced defendant in the mitigated range to a term of 15 to 18 months imprisonment.

On the following day, 31 July 2008, the trial court conducted a hearing to determine whether defendant should be enrolled in an SBM program. At that hearing, the State presented the testimony of Probation Parole Officer Brian Branch, who had performed the DOC Risk Assessment that was set out in the Static-99 Form, which was also submitted to the trial court. Officer Branch testified that out of the three recidivism risk levels—low, moderate, and high—defendant had a "moderate" risk assessment. Although the State also moved the admission of a written statement of a nurse practitioner describing the offense that resulted in the indecent liberties charge, the trial court excluded the statement based on defendant's objection. Defendant's counsel referred the trial court to a Sentencing Plan admitted in the previous day's sentencing hearing that reported the results of a sex offender-specific evaluation, which concluded that defendant "is a moderately-low risk for reoffense."

The trial court entered an order on AOC form AOC-CR-615, relying upon only the typewritten findings already set out in the form, including the findings (1) that defendant had committed an offense involving the physical, mental, or sexual abuse of a minor and (2) that defendant "requires the highest possible level of supervision and monitoring based on the Department of Correction's risk assessment program." The trial court ordered that defendant be enrolled in an SBM program for 36 months following completion of defendant's sentence and any term of post-release supervision. Defendant timely appealed to this Court from the trial court's 31 July 2008 order.

## Discussion

This Court's recent decision in *Kilby*, 198 N.C. App. at —, 679 S.E.2d at 432-33, involved N.C. Gen. Stat. § 14-208.40B (2007), the SBM statute that applies when an offender was convicted of a reportable offense in the past, but the trial court had not previously determined whether the offender should be required to enroll in an SBM program. This case, however, involves N.C. Gen. Stat. § 14-208.40A, the statute applicable when the district attorney has requested that the trial court consider SBM during sentencing. Nevertheless, the analysis in *Kilby* is equally applicable here.

As this Court recognized in *Kilby*, a trial court's SBM determination involves two phases: a "qualification" phase and a "risk assessment" phase. *Id.* at ——, 679 S.E.2d at 433. In the qualification phase, if a defendant was convicted of a reportable offense as defined by N.C. Gen. Stat. § 14-208.6(4) (2007), then the "district attorney shall present to the court any evidence" that the defendant falls into one of five categories: "(i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of G.S. 14-27.2A or G.S. 14-27.4A, or (v) the offense involved the physical, mental, or sexual abuse of a minor." N.C. Gen. Stat. § 14-208.40A(a). Upon receipt of the evidence from the State and any contrary evidence from the offender, the trial court is required to determine "whether the offender's conviction places the offender" in one of the five categories and to "make a finding of fact of that determination," specifying the category into which the offender falls. N.C. Gen. Stat. § 14-208.40A(b).

In this case, there is no dispute that defendant pled guilty to a reportable conviction as defined by N.C. Gen. Stat. § 14-208.6(4). The trial court, based on the State's evidence, further found that defendant's offense involved the physical, mental, or sexual abuse of a minor. The case then moved to the risk assessment phase.

N.C. Gen. Stat. § 14-208.40A(d) provides that "[i]f the court finds that the offender committed an offense that involved the physical, mental, or sexual abuse of a minor, that the offense is not an aggravated offense or a violation of G.S. 14-27.2A or G.S. 14-27.4A and the offender is not a recidivist, the court shall order that the Department [of Correction] do a risk assessment of the offender." Upon receipt of that risk assessment, "the court shall determine whether, based on the Department's risk assessment, the offender requires the highest possible level of supervision and monitoring." N.C. Gen. Stat. § 14-208.40A(e). If, as occurred in this case, the trial court determines that the offender does require the highest possible level of supervision and monitoring, then the trial court "shall order the offender to enroll in a satellite-based monitoring program for a period of time to be specified by the court." *Id.*

With respect to the risk assessment phase, in *Kilby*, as in this case, the DOC risk assessment concluded that defendant posed a "moderate" risk of reoffending. 198 N.C. App. at ——, 679 S.E.2d at 434. The trial court in that case, using the same AOC form used here,

nonetheless found that the defendant " 'requires the highest possible level of supervision and monitoring.' " *Id.* at ——, 679 S.E.2d at 434. The *Kilby* trial court, like the trial court here, made no further findings of fact to support this determination.

This Court first held:

Although we cannot discern any direct correlation between the designation of low, moderate or high risk by the DOC assessment and the terminology of N.C. Gen. Stat. § 14-208.40B(c) which directs the determination of whether an offender may "require the highest possible level of supervision and monitoring," N.C. Gen. Stat. § 14-208.40B(c), the trial court made no findings of fact which could justify the conclusion that "defendant requires the highest possible level of supervision and monitoring." The trial court erred by concluding that "defendant requires the highest possible level of supervision and monitoring." The findings of fact are insufficient to support the trial court's conclusion that "defendant requires the highest possible level of supervision and monitoring" based upon a "moderate" risk assessment from the DOC.

*Id.* at ——, 679 S.E.2d at 434.

The *Kilby* panel then addressed whether the case should be remanded for further findings of fact:

The State did not present evidence which could support a finding that "defendant requires the highest possible level of supervision and monitoring." The DOC assessment of defendant rated him as a moderate risk. The State's other evidence indicated that defendant was fully cooperating with his post release supervision, which might support a finding of a lower risk level, but not a higher one. As no evidence was presented which tends to indicate that defendant poses a greater than "moderate" risk or which would demonstrate that "defendant requires the highest possible level of supervision and monitoring[,]" we need not remand this matter to the trial court for additional findings of fact as requested by the State. Consequently, we reverse the trial court's order.

*Id.* at ——, 679 S.E.2d at 434.

In this case, the trial court's findings of fact were identical to the findings in *Kilby*. Since the DOC determined in this case, as in

*Kilby*, that defendant was a moderate risk, *Kilby* requires the conclusion that the trial court's findings of fact are insufficient to support the determination that defendant requires the highest possible level of supervision and monitoring. With respect to the sufficiency of the evidence, the only evidence presented by the State was the DOC assessment of "moderate" risk and the officer's brief explanation of how that assessment was reached. Thus, the State only presented evidence that defendant was a moderate risk and presented no evidence that defendant needed the highest possible level of supervision and monitoring.

Implicitly acknowledging that the State's evidence at the hearing was insufficient to support the trial court's ultimate determination, the State, on appeal, points to the Sentencing Plan relied upon by defendant at the hearing. Although it is not entirely clear that this Plan was actually admitted into evidence at the SBM hearing, the Plan reported "that [defendant] is a moderately-low risk for re-offense."

The State, however, after noting that assessment, points to the portion of the report where the doctor making the assessment of moderately-low risk also made various recommendations related to sentencing. The State asserts on appeal that those recommendations "are at odds with the assessment of moderately-low risk" and "are at odds with the DOC Risk Assessment." A review of those recommendations does not immediately lead to that conclusion, and, in any event, the State presented no evidence in the trial court to support the assertions made in its brief about defendant's degree of risk. The State cannot support a trial court's order by proffering its own "expert" opinion on appeal, unsupported by testimony or documentary evidence, about the meaning of a doctor's recommendations. Moreover, the State cites no authority that would permit the trial court to disregard the DOC's risk assessment in the manner urged by the State on appeal.

We, therefore, believe that *Kilby* controls. The State presented no evidence supporting the trial court's determination that defendant requires the highest possible level of supervision and monitoring. "As the DOC assessed defendant herein as a 'moderate' risk and the State presented no evidence to support findings of a higher level of risk or to support the requirement for 'the highest possible level of supervision and monitoring[,]' the trial court's order is reversed." *Id.* at ——, 679 S.E.2d at 434. Since we have reversed the trial court's order, we need not address defendant's remaining arguments.

Reversed.

Judges BRYANT and STEPHENS concur.